IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

STEPHEN GANSTINE,

    Plaintiff,

v.                                            CASE NO.  4:11cv88-RH/WCS

EDWIN BUSS et al.,

    Defendants.

_____/

## ORDER GRANTING SUMMARY JUDGMENT

The plaintiff is a former prisoner in the Florida Department of Corrections. He asserts that a prison doctor violated the Eighth Amendment by failing to adequately treat his serious medical needs and that the Department violated the Americans with Disabilities Act by failing to provide necessary treatment, failing to provide wheelchair access to all facilities, and allowing correctional officers to harass him and require him to work too much.  The defendants have moved for summary judgment.  This order grants summary judgment primarily on the ground that the facts do not support the claims.

I

On the defendants' summary-judgment motion, disputes in the evidence of course must be resolved—and all reasonable inferences must be drawn—in the plaintiff's favor. When viewed that way, the facts are these.

The plaintiff Stephen Ganstine suffers from a number of medical conditions, including obstructive sleep apnea, diabetes, obesity, gout, chronic lower back pain, heart disease, and hypertension. Mr. Ganstine entered the Department of Corrections on March 1, 2007. He arrived at Lake Butler Reception Medical Center on March 2, 2007. He promptly received a brief medical screening from a physician's assistant. Mr. Ganstine received a physical examination from a physician, the defendant Erlinda Perez, on March 6, 2007.

Dr. Perez examined Mr. Ganstine for more than an hour. It was a thorough examination. Dr. Perez prescribed medicines for some of Mr. Ganstine's conditions. But Dr. Perez chose not to prescribe three treatments Mr. Ganstine said he needed.

First, Dr. Perez did not prescribe a continuous positive airway pressure ("CPAP") device to treat sleep apnea. Dr. Perez concluded, for reasons she has clearly articulated, that Mr. Ganstine was not in immediate need of a CPAP. Thus, for example, Dr. Perez noted no report of fatigue, a symptom ordinarily associated with serious sleep apnea. Dr. Perez concluded that the decision whether to

prescribe a CPAP could safely await a pulmonary examination of the kind that could be arranged by the physician who would take responsibility for Mr. Ganstine when he arrived at the facility where he would serve his sentence.

Nor did Dr. Perez prescribe soft diabetic shoes or a wheelchair. Instead, Mr. Ganstine received a walker. Dr. Perez concluded from her examination—which included watching Mr. Ganstine walk—that Mr. Ganstine did not need diabetic shoes or a wheelchair. It is undisputed that Mr. Ganstine did not have a wheelchair before he entered the Department of Corrections and did not have one after he left. He could walk, though only with difficulty and for a limited distance.

Mr. Ganstine arrived at a permanent facility, Apalachee Correctional Institution, on May 4, 2007. Walkers were not allowed at Apalachee, so Mr. Ganstine received a cane instead. Dr. Perez had nothing to do with the change from a walker to a cane. Mr. Ganstine received soft shoes on his arrival at Apalachee but still no wheelchair or CPAP.

Mr. Ganstine suffered kidney failure on May 23, 2007, and was hospitalized. While in the hospital, he received a CPAP. When he left the hospital and returned to the Department of Corrections, the CPAP went with him. For the remainder of his imprisonment, Mr. Ganstine kept the CPAP.

After the hospitalization, Mr. Ganstine's permanent facility was Gulf Correctional Institution Annex. On July 20, 2007, a physician saw Mr. Ganstine at

Gulf Annex and prescribed a wheelchair.  Mr. Ganstine kept the wheelchair for the remainder of his imprisonment.

Gulf Annex had special recreational programs to accommodate inmates with disabilities.  Its facilities, including restrooms, were fully accessible.  Mr. Ganstine says, though, that it was hard to get to the recreational yard, because correctional officers discouraged the use of the only sidewalk, and the alternate routes were covered with sand too thick to traverse in a wheelchair without help.  Mr. Ganstine says the only way to get to the canteen was through the rec yard, and that while the restroom adjoining the rec yard and canteen was properly equipped for use by a wheelchair-bound inmate, the sand made it difficult to get there.

Mr. Ganstine admitted at his deposition that he was assigned orderlies who assisted him in getting wherever he wished to go.  He said the orderlies were available "most of the time" and that there were "very, very few times" when he could not get to a destination.  Mr. Ganstine said sometimes he pushed himself to a destination: "It took longer, but I'd get there."  Ganstine Dep. 57, ECF No. 44-12 at 15.

Mr. Ganstine says that correctional officers sometimes belittled him or treated him poorly.  For example, a correctional officer once suggested a race between Mr. Ganstine and another inmate with a walker.  An officer required Mr. Ganstine to work—all inmates are required to work—for an hour longer than other

inmates, until Mr. Ganstine complained to higher officials; after the complaint, the offending officer relented.

II

After Mr. Ganstine completed his sentence and was released, he filed this action, seeking an award of damages. Mr. Ganstine asserts a claim against Dr. Perez under the Eighth Amendment and 42 U.S.C. § 1983. Mr. Ganstine asserts a claim under the Americans with Disabilities Act against the Secretary of the Department in his official capacity. Mr. Ganstine originally asserted claims against two other Department employees—nurse Lillian Sweat and Dr. Patrick Brown—but those claims were dismissed in a prior order. Judgment was not entered on the claims against Ms. Sweat and Dr. Brown under Federal Rule of Civil Procedure 54(b), so this order directs entry of judgment on those claims.

III

A prison doctor violates the Eighth Amendment—and a prisoner can obtain redress under § 1983—when the doctor is deliberately indifferent to the prisoner's serious medical needs. *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). A delay in treatment, like a failure to treat or inadequate treatment, can constitute deliberate indifference. But deliberate indifference is a high standard. *See*, *e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To demonstrate deliberate indifference, a plaintiff must

prove "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005) (per curiam) (alteration in original) (citation omitted).

I assume for purposes of this order that a delay in providing a CPAP or soft shoes or a wheelchair can constitute deliberate indifference to a serious medical need. But Mr. Ganstine's claim against Dr. Perez fails on the facts.

Dr. Perez examined Mr. Ganstine for more than an hour, carefully reviewing and documenting his medical condition. This was not a cursory examination or one exhibiting deliberate indifference. This was, instead, the very antithesis of deliberate indifference. The record establishes without dispute that Dr. Perez exercised her best medical judgment and treated Mr. Ganstine accordingly.

To be sure, Dr. Perez did not prescribe the CPAP that Mr. Ganstine wanted. Instead, Dr. Perez concluded, for reasons she has clearly articulated, that Mr. Ganstine was not in immediate need of a CPAP. This was a classic disagreement about proper treatment—the kind of disagreement that plainly does *not* constitute deliberate indifference. *See, e.g.*, *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985). And this conclusion draws support from the weight of authority in CPAP cases; most courts addressing the issue have

held that, on their facts, the failure to provide a CPAP did not constitute deliberate indifference. *See*, *e.g.*, *Alfred v. Winn Corr. Ctr.*, 368 F. App'x 583 (5th Cir. 2010) (affirming the dismissal of a CPAP claim); *see also* Kimberly J. Winbush, Annotation, *Prison Inmate's Eighth Amendment Rights to Treatment for Sleep Disorders*, 68 A.L.R.6th 389, §§ 5-6 (2011) (collecting cases).

Dr. Perez also did not prescribe soft diabetic shoes; Dr. Perez did not believe Mr. Ganstine needed them. This again was not deliberate indifference. *See Bismark v. Fisher*, 213 F. App'x 892, 897 (11th Cir. 2007) (affirming summary judgment for a prison doctor who examined the plaintiff and determined that special shoes were unnecessary, despite an outside podiatrist's prescription for special shoes); *Turner v. Solorzano*, 228 F. App'x 922, 923-24 (11th Cir. 2007) (affirming summary judgment against a prisoner with an amputated toe who did not get soft shoes).

Nor did Dr. Perez prescribe a wheelchair. But it is undisputed that Mr. Ganstine had not been using a wheelchair before he entered the Department, and did not use one on his release. It is undisputed that Mr. Ganstine could in fact walk, though only for a limited distance and with some difficulty. Dr. Perez observed Mr. Ganstine walk as part of the physical examination. Dr. Perez concluded that Mr. Ganstine needed a walker, not a wheelchair. The conclusion may have been correct—Mr. Ganstine's failure to use a wheelchair outside the

Department provides some evidence of that—but at worst it was an error in medical judgment of a kind that, again, does *not* constitute deliberate indifference.

The conclusion that Dr. Perez did not violate the Eighth Amendment makes it unnecessary to determine whether, even if she did, she would be protected from liability by qualified immunity.

IV

Title II of the ADA prohibits a public entity from denying a disabled person the benefits of the entity's services, programs, or activities. To at least some extent, Title II is within Congress's authority to enact legislation under § 5 of the Fourteenth Amendment. To that extent, an ADA claim against a state is not barred by the Eleventh Amendment. *See*, *e.g.*, *United States v. Georgia*, 546 U.S. 151, 157-59 (2006).

Mr. Ganstine asserts that the Department violated Title II in several respects, including these: delaying the provision of the CPAP, wheelchair, and diabetic shoes; hindering his access at Gulf Annex to the canteen, library, weight room, barber shop, and a restroom; and belittling him and making him work more than other inmates, either because of his disability or in retaliation for his complaints of disability discrimination.

It is unclear whether the Eleventh Amendment would bar Mr. Ganstine from recovering on any or all of these grounds. Thus, for example, it is unclear whether

the applicability of the Eleventh Amendment in a prison should be determined at that level of generality—a state's operation of a prison—or should be separately analyzed for more specific categories of claims. Because the claims fail anyway, the Eleventh Amendment issues need not be addressed.

Even assuming Mr. Ganstine was a person with a disability within the meaning of the ADA, and that this was so based on both sleep apnea and difficulty walking, the delay in providing a CPAP, soft shoes, and a wheelchair was not an ADA violation. A denial of medical treatment, without more, is not an ADA violation. *See*, *e.g.*, *Dukes v. Georgia*, 428 F. Supp. 2d 1298, 1324 (N.D. Ga. 2006) (citing *Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir.1996) (Posner, C.J.) (noting that the ADA addresses a disabled person's rights regarding access to programs and services enjoyed by all, but does not provide a general cause of action to challenge the manner of medical treatment for the underlying disability)); *see also Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005) (citing *Bryant*, 84 F.3d at 249) (noting that inadequate medical treatment is not, without more, an ADA violation); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (finding that "purely medical decisions" do not ordinarily fall within the scope of the ADA).

To be sure, a denial of medical treatment may violate the ADA if it is based on discrimination against a person with a disability—a physician's refusal to

perform heart surgery on a patient with AIDS, for example.  And a denial of medical treatment may violate the ADA if the treatment is necessary to allow a person to access other services—a physician's refusal of a wheelchair, leaving a patient no way to get to the library or canteen, for example.  But nothing in the record suggests that the temporary denial of a CPAP, soft shoes, or a wheelchair had this effect.

   Mr. Ganstine says that the Gulf Annex recreational yard was covered with sand and that a person had to traverse the sandy area to get to the canteen, library, weight room, barber shop, and nearby restroom.  There was a sidewalk to these areas, but Mr. Ganstine says correctional officers discouraged its use.  Mr. Ganstine says he could not get his wheelchair through the sandy areas and thus could not get to the canteen and other facilities.

   This claim fails because Mr. Ganstine admitted at his deposition that the Department provided orderlies to push his wheelchair and that he almost always was able to get where he wanted to go.  *See* Ganstine Dep. 57, ECF No. 44-12 at 15.  Under the settled law of the circuit, the conclusory allegations in Mr. Ganstine's affidavit opposing summary judgment are insufficient to overcome his clear deposition testimony on this point.  *See*, *e.g.*, *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984); *see also, e.g., Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986-87 ("This court has consistently held that

conclusory allegations [made in an affidavit] without specific supporting facts have no probative value.").

Finally, Mr. Ganstine says correctional officers verbally belittled him based on his disabilities, and, when he could not do the same work as others, required him to do alternative work—dusting—and to stay at it for an hour longer than others. Mr. Ganstine acknowledged that when he complained about the work, the problem was promptly corrected. And the verbal comments, while inexcusable—if, as I assume for summary-judgment purposes, they occurred at all—do not rise to the level of an ADA violation. *See*, *e.g.*, *Moore v. Curtis*, 68 F. App'x 561, 563 (6th Cir. 2003) (holding that verbal and physical harassment by prison officials did not violate the ADA because the plaintiff "did not allege or show that the defendants deprived him of any service, program, or activities because of his disability, and his disputes with staff and his inmate assistants resulted in only isolated instances where he missed meals or privileges"); *see also Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1214-15 (D.C. Cir. 1997) (general rudeness did not amount to discrimination "by reason of" the plaintiff's disability).

The ADA, like Title VII of the Civil Rights Act of 1964, is not a general civility code. It has long been settled that rudeness and other intangible mistreatment must be "severe or pervasive" to give rise a hostile-environment

Case No. 4:11cv88-RH/WCS

claim under Title VII.  *See*, *e.g.*, *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21-22 (1993).  And rudeness and other intangible mistreatment give rise to a Title VII *retaliation* claim only if the kind of mistreatment would discourage a reasonable employee from complaining about discrimination.  *See*, *e.g.*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).   There is no reason to hold the ADA's standards less stringent.  Mr. Ganstine's evidence of rudeness or other intangible mistreatment thus does not establish an ADA violation.[1]

Moreover, the Eleventh Amendment would bar a claim against a state for rudeness or other intangible mistreatment that is not severe or pervasive.  Congress can override a state's Eleventh Amendment immunity by enacting appropriate legislation under § 5 of the Fourteenth Amendment, but Congress cannot adopt new substantive rights under § 5 that do not exist under the Fourteenth Amendment itself.  *See*, *e.g.*, *City of Boerne v. Flores*, 521 U.S. 507, 519 (1997).  Congress thus cannot abrogate Eleventh Amendment immunity for a prisoner's claim based only on rudeness or a general civility code: "Standing alone, simple verbal harassment

---

[1] This makes it unnecessary to consider whether an ADA defendant has an affirmative defense analogous to the defense available in a Title VII case, or whether the Department would succeed on any such defense on the facts of this case.  *See*, *e.g.*, *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998) (recognizing a defense to a Title VII hostile-environment claim when a defendant uses reasonable care to prevent and correct promptly any offending behavior and the plaintiff unreasonably fails to take advantage of any corrective opportunities provided by the employer); *Burlington Indus., Inc.  v. Ellerth*, 524 U.S. 742, 765 (1998) (same).

does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) (citations omitted); *see also, e.g., Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999) (holding that the use of racial epithets, "without harassment or some other conduct that deprives the victim of established rights, does not amount to an equal protection violation"), *clarified on reh'g*, 186 F.3d 633, 634 (5th Cir. 1999).

Mr. Ganstine has not provided sufficient evidence to support a finding that the Department of Corrections violated the ADA.

V

For these reasons,

IT IS ORDERED:

The defendants' summary-judgment motion, ECF No. 44, is GRANTED. The clerk must enter judgment stating, "All of the plaintiff's claims against all defendants are dismissed with prejudice." The clerk must close the file.

SO ORDERED on December 27, 2011.

s/Robert L. Hinkle<br>United States District Judge